Geha *v.* Baltimore L. Ins. Co., Appellant.

Submitted April 19, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Niles, Barton, Morrow & Yost* and with them *Percy Allen Rose,* for appellants.

*John M. Bennett* of *Weimer & Bennett,* for appellee.

Opinion by Parker, J., October 2, 1933:

Plaintiff, the beneficiary in a life insurance policy in defendant company dated March 27, 1928, in the sum of $2,000 upon the life of her husband, Charles J. Geha, who died September 16, 1930, recovered a verdict of $2,000 with interest. Defendant's motions for a new trial and for judgment n. o. v. were overruled by the court below, in banc, when an appeal was taken to this court from the judgment entered upon the verdict.

The defendant contended that it was not liable because the policy, under its terms, had lapsed on April 28, 1930. The policy provided for quarter annual premiums payable in advance on or before the 27th days of March, June, September, and December in

every year until the death of the insured. A grace of thirty-one days for payment of premiums was allowed by the terms of the policy, during which it remained in force. The premium due on March 27, 1930, was not paid to the company, but the beneficiary testified that George C. Horner, who had written the policy and collected the premiums, was indebted to the insured, and that during the period of grace and prior to April 28th, Horner said to the insured: "I couldn't give you any money, but at least I could pay your insurance. I will pay it for you and you don't need to bother about it." She admitted that the insured was advised by the company that the premium had not been paid and that she then went to Horner and stated to him that he had promised to pay the premium and had not done so, when Horner told her that he could not spare the money to pay it. This conversation with Horner was denied by him, but by reason of the verdict we must, for present purposes, assume the facts to be as stated by the plaintiff. She then on May 24, 1930, gave to Horner a check on the Moxham National Bank for $15.08 payable to the Baltimore Life Ins. Co., and received from him a receipt for the money in the following form: "Date May 23, 1930. Received from Charley J. Geha fifteen and 08/xx dollars on account of weekly premium on Policy No. .. $15.08. Agent: Geo. C. Horner. Emergency receipt, to be used only when the receipt book is not at hand." At the same time, Horner gave Mrs. Geha a blank application for reinstatement of the policy which she forwarded to her husband and which he signed and returned to the agent Horner. This application was as follows: "I hereby certify, that I am the person who was insured under Policy No. 0, issued by The Baltimore Life Insurance Company, of Baltimore, Md., on the ......day of ...... 19.. and that said policy is lapsed for non-payment of premium. I hereby request the said company to revive the same from date of lapse and

as a condition precedent thereto, hereby declare that I am in good health at the present time and free from any disease whatsoever to the best of my knowledge and belief. Witness my hand this.......day of...... 19... Applicant's signature: Charles J. Geha."

Another premium fell due on June 27. On July 26, 1930, the beneficiary gave the agent Horner another check on the same bank for the same amount to the order of the company and received in return a receipt dated the same day. This receipt contained, inter alia, the following: "It is understood and agreed by both the company and the person named hereon as a former policyholder, that all monies receipted for hereon have been paid by the former policyholder herein mentioned, (or for him or her), on account of the revival of the policy herein mentioned; that such policy is now lapsed, and is not in force nor will it be considered in force by either the said company or the said former policyholder until all back premiums have been paid in full; nor until the said former policyholder has furnished the said company with a certificate showing that he (or she) is in perfect health. If such certificate is satisfactory to the said company, the money receipted for hereon may be transferred to the regular premium receipt book belonging to the policy, and the policy placed in force under its terms."

The first position of the plaintiff is that the insurance company was estopped from claiming a forfeiture by the promise of the agent to pay the premium due in March, 1930, on account of a sum which the agent owed the insured. We are unable to agree with this contention. In making such a promise, Horner was the agent of the insured and not of the insurance company. An intolerable situation would be created if such an agent might use the funds of an insurance company for the purpose of satisfying his personal obligations to a policyholder. It has been held in several cases that such a promise does not affect the

insurance company. In Lycoming Fire Insurance Co. v. Storrs, 97 Pa. 354, the insurance company defended against the payment of a policy of insurance on the ground of non-payment of premium. The insured testified that an agent of the company had agreed with him that the premium due should be paid by crediting the latter with the amount of the assessment on a land contract which he had with the agent. The Supreme Court, in disposing of the case, said (p. 360): "Bartlett [the agent] had no right to take the company's money to pay his private debt to Means, and this the latter knew or ought to have known." In the case of Crawford County Mutual Ins. Co. v. Cochran, 88 Pa. 230, the insured under a policy of fire insurance was employed by the agent of a company. During that employment, the insured received notice of an assessment from the company which he presented to the agent who agreed that he would deduct the amount thereof from the wages of the insured and pay the assessment forthwith. It was there said (p. 235): "If Bemis [the agent] had been authorized to receive payment of assessments in money, an attempted payment in labor to Bemis personally would have been no payment to the company. One partner cannot discharge a debt due to the firm of which he is a member, in consideration of work rendered for his individual benefit. Equally as great mischief, and more confusion, would result from holding that a debtor to an insurance company may pay an assessment levied to pay losses, by an individual trade, exchange or barter with an agent." This conclusion is in accord with the understanding of the parties, for the insured made an application for reinstatement, in which he admitted that the policy had lapsed, and accepted a receipt in July wherein again it was set forth that the policy was not in force. Except as otherwise provided, the non-payment when due, or within the period of grace given by the policy, of the premium on a life insurance policy

causes a forfeiture thereof without any affirmative act of forfeiture on the part of the defendant: Pyrich v. Scranton Life Ins. Co., 94 Pa. Superior Ct. 159, 164; McDonald v. Columbian Nat. Life Ins. Co., 253 Pa. 239, 97 A. 1086; Cooper v. Belt Auto. Ind. Assn., 79 Pa. Superior Ct. 479.

The second position of the appellee is that the defendant was estopped to deny waiver of forfeiture by retention of checks for the overdue March and June premiums. We have held that where a policy of life insurance contains a provision that if the policy should become void in consequence of non-payment of premium, it might be revived upon payment of arrears and the presentation of evidence satisfactory to the company of the sound health of the insured, and it appears that after a policy had become void an amount was paid to the company sufficient to cover the premiums in arrears and the company retained the money without requesting any proof as to the soundness of his health, it is not error for the court to submit to the jury the question whether the company had reasonable time within which to determine what its action would be and whether the retention of the money did not indicate a determination to revive the policy: White v. Metropolitan Life Ins. Co., 22 Pa. Superior Ct. 501. Also, see Malchinsky v. Mutual Life Ins. Co., 90 Pa. Superior Ct. 1. The prime difference between those cases and the one now before us is that here the plaintiff has not traced the payments into the hands of the defendant. There are also other points of difference to which we will refer. In the White and Malchinsky cases, the checks for the premiums in arrears were received and cashed by the defendant company, which was sufficient to bring home to it notice of what its agent had done. Horner was an agent with limited authority authorized only to deliver policies and receive premiums and without any authority to countersign policies. The checks were held by an agent and

not cashed or turned over to the company. Where a policy of life insurance has become forfeited by its own terms by reason of non-payment of premiums, the insured cannot claim a waiver of the forfeiture by proof of an agreement with the agent of the company where there is no evidence that the agent had authority to make such an agreement or that the company ratified it if made: Murphy v. Prudential Ins. Co., 30 Pa. Superior Ct. 560. Here the contract provided: "This contract cannot be altered except by endorsement hereon in writing signed by the president or vice-president of the company;" and that "All premiums are due and payable at the home office of the company in Baltimore, Md., but will be accepted when paid to agents of the company in exchange for its receipts signed by the president or secretary and countersigned by the agent." There is not a scintilla of evidence indicating that the company waived or intended to waive either the limitation upon the authority of its agents contained in the policy or the provisions written therein with respect to the effect of a failure to pay premium within the period of grace. This brings the instant case clearly in line with the ruling of this court in the case of Pyrich v. Scranton Life Ins. Co., supra. It follows that defendant's point for binding instructions should have been affirmed.

The judgment is reversed and is here entered for the defendant.