Gilda M. FISHER

v.

AMERICAN NATIONAL INSURANCE COMPANY.

Ctv. A. No. 15885.

United States District Court
E. D. Pennsylvania.
Jan. 31, 1956.

 

Goldin & Goldin, Philadelphia, Pa., for plaintiff.

Owen B. Rhoads, Philadelphia, Pa., for defendant.

KRAFT, District Judge.

In this case counsel have agreed that, in lieu of trial, the court shall enter an appropriate judgment upon the following stipulated facts: The plaintiff, Gilda M. Fisher (beneficiary) was the designated beneficiary in a policy of life insurance upon the life of John Thomas Fisher, Sr. (insured), issued by the defendant, American National Insurance Company (insurer), in the amount of $5,000, on October 12, 1951 in Philadelphia, Pennsylvania. Beneficiary is a citizen of New Jersey and insurer a Texas corporation. The insurance policy is a Pennsylvania contract and the law of that state applies.

Beneficiary's check in the amount of $11.80 for the premium due April 12, 1953 was deposited by insurer on May 11, 1953 and was returned May 15, 1953 by the drawee bank because of "insufficient funds". This premium was neither paid when due nor within the thirty-one day grace period thereafter and for that reason the policy lapsed. The insured and the beneficiary were advised by insurer of the dishonor of the check and of the lapse of the policy.

Beneficiary, on or after May 15, 1953, sent to insurer two additional checks, dated May 15, 1953, in the amount of $11.80 each. The checks disclose that they were tendered to insurer for premiums due May 12 and June 12, 1953, respectively. The insurance policy had lapsed prior to the issuance of these checks by beneficiary and their receipt by insurer. Insurer did not deposit these checks.

About noon, on Saturday, June 6, 1953, beneficiary delivered to a United States postman on his route an envelope properly stamped and addressed to Mr. William Gilvear, 481 Krams Avenue, Philadelphia 26, Penna., an agent of the insurer. This envelope contained a check of the

beneficiary to insurer's order in the amount of $11.80, dated June 1, 1953, without designation thereon of the premium to which it was intended to apply. In the envelope with this check was an application for reinstatement signed by the insured at Camden, N. J., dated June 4, 1953. Immediately above the application for reinstatement, addressed to the insurer at Galveston, Texas, was a direction to the insurer to find a remittance enclosed in the amount of $11.80. to cover premium due on the policy referred to on the other side of the form. The reverse side of the form was a notice from insurer that the grace period had expired on this policy and that the overdue premium was $11.80. The envelope was deposited by the postman and thereafter postmarked at the Camden, N. J. post office on June 6, 1953. The postmark is sufficiently legible to disclose only that it was so postmarked between 3:00 and 10:00 p. m. This envelope and its contents were received by the addressee and by insurer after insured's death and insurer did not deposit the enclosed check.

The insured made no complaint of any illness or of his physical condition prior to 3:00 p. m. June 6, 1953. He suffered his first heart attack on that date at 3:00 p. m. and died that afternoon between 5:30 p. m. and 6:00 p. m. Beneficiary subsequently filed with insurer the requisite proofs of death.

The reinstatement provision of the policy is as follows:

"If this policy shall lapse because of default in payment of any premium, it may be reinstated at any time unless the cash surrender value has been paid or the term of any paid-up extended insurance has expired, upon presenting to the Home Office evidence of insurability, including good health, together with payment (or reinstatement as a loan which complies with the policy loan provision) of all indebtedness and premiums in arrears with interest from the respective due dates at the rate of five percent (5%) per year."

Upon the foregoing admitted facts beneficiary contends that the lapsed policy was automatically reinstated by the delivery of the reinstatement application and the check to the postman prior to insured's death. Insurer maintains that the policy was not so reinstated.

Beneficiary urges the adoption and extension of the decisions in Officer v. New York Life Insurance Co., 73 Colo. 495, 216 P. 253, and Kennedy v. Occidental Life Ins. Co., 18 Cal.2d 627, 117 P.2d 3. Both cases are readily distinguishable from the instant case, since in each the reinstatement application and premium arrearages were delivered to a branch office of the insuring company while the insured was living and were in transit from the branch office to the home office when insured died. No case has been cited or found, holding that, under like policy provisions, reinstatement is effected by the act of mailing a reinstatement application and a check for premium arrearage, where insured dies before delivery thereof to any agency of the insurer.

Giordano v. St. Paul Fire & Marine Ins. Co., 66 Pa.Super. 575, cited by the beneficiary, is not to be regarded as blanket authority for the proposition that mailing and actual delivery are synonymous under Pennsylvania law. That decision by a divided court must be interpreted in the light of the contract terms there involved and the factual and evidential situation to which those terms were applied. In the present case delivery to the postman on his route constituted a mailing. Pearce v. Langfit, 101 Pa. 507. That mailing was sufficient to create a presumption of subsequent delivery to the addressee; however, unless the act of mailing alone is construed to be actual delivery, the presumption is of no avail in this case because beneficiary and insurer have stipulated that delivery to and receipt by the addressee occurred after insured's death.

The principle that insurance contracts shall be construed most strongly against the insuring company applies

only where the meaning of the contract is obscure or ambiguous. It is not applied to distort the meaning of commonly understood words for the purpose of reaching a result favorable to the insured. Urian v. Scranton Life Ins. Co., 310 Pa. 144, 165 A. 21; Topkis v. Rosenzweig, 333 Pa. 529, 5 A.2d 100; Lyford v. New England M. Life Ins. Co., 122 Pa.Super. 16, 184 A. 469. The policy provision that, if lapsed, "it may be reinstated * * * upon presenting to the Home Office evidence of insurability, including good health * * *" contemplates, at least, the receipt of that evidence by the insurer in insured's lifetime and an opportunity reasonably to determine the adequacy of the evidence presented to establish good health and insurability.

This interpretation is supported by the dictum in Fishman v. Eureka-Maryland Assurance Corp., 120 Pa.Super. 490, 499, 183 A. 98, 102, cited with approval in Peters v. Colonial Life Ins. Co., 128 Pa. Super. 21, 193 A. 460:

"Until the application is received by the company evidence of the applicant's insurability has not been furnished or produced. If the applicant dies before the evidence of insurability, on which the company is to determine whether it is satisfactory or not, is furnished to the company, there is no reinstatement of the policy."

▉▉ The check for $11.80 which accompanied the reinstatement application included no interest accrual, but the effect of this omission has not been challenged by insurer and so is deemed waived. However, insurer does contend that the mere mailing of beneficiary's check for the overdue premium does not satisfy the policy reinstatement requirement that insured present payment of all premiums in arrears to insurer's home office. It is immaterial that the check was the beneficiary's rather than the insured's. It is unnecessary to determine the effect of mailing the check to an agent of the insurer rather than to insured's home office or to decide whether the check, when received, constituted payment or conditional payment only, since the check was not received by any office or agency of the insurer while insured lived. The policy provision that if lapsed, "it may be reinstated * * * upon presenting to the Home Office * * * payment * * * of all * * * premiums in arrears * * *" intends receipt of the payment by the insurer in the lifetime of the insured.

▉ Since the insured died before the evidence of his insurability and the payment of the premium in arrears were received by any agent or office of the insurer the policy was not reinstated at the time of his death. Accordingly, January 31, 1956 judgment is entered for defendant.